**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LEMONT LOVE, | : |
| Plaintiff, | : Civil Action No.: 13-1050 (SDW) |
| v. | : |
|  | : **OPINION** |
| DEPARTMENT OF CORRECTIONS, et al., | : |
| Defendants. | : |

**APPEARANCES:**

    **LEMONT LOVE, Plaintiff *pro se***
    # 331321C
    Northern State Prison
    P.O. Box 2300
    Newark, New Jersey 07114

    **CHRISTINE H. KIM, ESQ.**
    OFFICE OF THE N.J. ATTORNEY GENERAL
    Department of Law & Public Safety – Division of Law
    R.J. Hughes Justice Complex
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625
    Counsel for Defendants

**WIGENTON, District Judge**

This matter is before the Court pursuant to a motion to dismiss Plaintiff's Complaint, under Federal Rule of Civil Procedure 12(b)(6), (ECF No. 5), filed on behalf of Defendants, New Jersey Department of Corrections ("NJDOC"), Northern State Prison ("NSP"),

and Paul Lagana. Plaintiff has filed an opposition to Defendants' motion. (ECF No. 6.) This motion is decided on the papers, without oral argument, pursuant to Fed.R.Civ.P. 78. For the reasons set forth below, the Court will grant Defendants' motion and dismiss the Complaint accordingly.

## I. BACKGROUND

A. Procedural History

Plaintiff filed his Complaint initially in the Superior Court of New Jersey, Law Division, Essex County, on August 1, 2012. (ECF No. 1-1.) Thereafter, on February 21, 2013, Defendants removed the case to this District Court. (ECF No. 1.) After granting an extension of time to answer or otherwise respond to the Complaint, Defendants filed this motion to dismiss on May 1, 2013. (ECF No. 5.) Plaintiff filed an opposition to Defendants' motion on May 21, 2013. (ECF No. 6.)

B. Statement of Facts

Plaintiff brings this action against the following Defendants: the NJDOC; the NSP; Paul Lagana, Administrator at NSP; Ms. McGee, NSP Control Officer; and John Doe Defendants 1-10. (ECF No. 1-1, Complaint at ¶ 1.) Plaintiff alleges that he had made several complaints verbally and by the administrative remedy process concerning the mailroom staff "not giving [Plaintiff his] mail in a timely fashion." (*Id*.) Plaintiff alleges that he was told that

his "mail is sorted and handed out on a daily basis." (*Id.*) Plaintiff complains that this alleged wrongful conduct by Defendants has deprived him of his constitutional right of access to the courts. (*Id.*)

Plaintiff also alleges that Defendants have failed to provide adequate light in his cell, which has led to the deterioration of his eyesight. Specifically, Plaintiff alleges that the light in his cell was broken and he asked to have it fixed. "Despite a work order being placed to fix this problem," the light remained broken and Plaintiff was "forced to read and write in virtual darkness for the past several months." (*Id.* at p. 2.) Plaintiff now suffers from blurry vision and frequent headaches. (*Id.*)

Plaintiff seeks over $850,000.00 in compensatory and punitive damages from Defendants. (*Id.* at ¶ 3.)

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) ("[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the

pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and alterations omitted).

### III. DISCUSSION

A. Eleventh Amendment Immunity

Defendants NJDOC and NSP first argue that they are entitled to immunity under the Eleventh Amendment, and that they are not "persons" subject to liability under 42 U.S.C § 1983.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general rule, a suit by private parties seeking to impose a liability that must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. *See, e.g., Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Rivers v. SCI Huntingdon Prison*, --- F. App'x ----, 2013 WL 3958615 (3d Cir.2013). Thus, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against that state or any one of its agencies. *Wisconsin Dept. of Corrections, supra; Rivers, supra*. Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979); *Ellington v. Cortes*, --- F. App'x ----, 2013 WL 3822161, *2 (3d Cir. 2013).

The NJDOC is a state entity or agency of the State of New Jersey. *See* N.J. Stat. Ann. 30:1B (establishing "in the Executive Branch of the State Government a principal department which shall be known as the Department of Corrections."). Moreover, NSP is a sub-part of the NJDOC. *Wilson v. Haas*, No. 11-7001, 2012 WL 6761819, at *5 (D.N.J. Dec. 28, 2012) (explaining that "New Jersey state prison facilities are entitled to immunity from suit in federal court under

5

the Eleventh Amendment and, therefore, they are not "persons" within the meaning of § 1983.") (citing *Grabow v. Southern State Correctional Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989); *Cf. Bey v. Pennsylvania Dept. of Corr.*, 98 F. Supp.2d 650, 657 (E.D.Pa. 2000) (finding that State correctional institutions were arms of the state because those entities were run exclusively by and through the State's Department of Corrections, and therefore they were immune under the Eleventh Amendment from claims raised in a prisoner's § 1983 action). Accordingly, the Complaint against the NJDOC and NSP is barred by the Eleventh Amendment and should be dismissed with prejudice accordingly, pursuant to 28 U.S.C. § 1915A(b)(2).[1]

B. <u>Respondeat Superior</u>

Defendants next argue that Plaintiff's claims against Paul Lagana, Administrator at NSP, are based solely on the impermissible theory of respondeat superior because Plaintiff does not allege facts to establish that Lagana was personally involved in the alleged wrongdoings. Indeed, the Complaint alleges nothing more than "Paul

---

[1] In addition, as argued by Defendants in their motion to dismiss, the Complaint must be dismissed as against Defendants NJDOC and NSP because both the NJDOC and the NSP are not entities cognizable as "persons" for the purposes of a § 1983 suit. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70–71 and n. 10 (1989); *Duran v. Merline*, 923 F. Supp.2d 702, 713, fn. 4 (D.N.J. 2013) (holding that a jail is not a "person" under § 1983).

6

Lagana is the administrator and has supervisory liability over the staff defendants." (ECF No. 1-1, Compl. at p. 2.)

"In order for liability to attach under § 1983, a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, No. 12-4564, 2013 WL 3834399, *2 (3d Cir. July 25, 2013) (per curiam) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). *See also Walsifer v. Borough of Belmar*, 262 F. App'x 421, 425 (3d Cir. 2008). Allegations of personal involvement, however, "must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

In this case, the Complaint fails to assert specific allegations that Lagana had any personal involvement in the alleged mail delivery delays or the light in Plaintiff's cell that remained broken for several months. Plaintiff's allegation against Lagana is plainly conclusory in nature and is limited solely to Lagana's role as supervisor/administrator at NSP.

Consequently, Plaintiff fails to state any allegations "with appropriate particularity" as to Lagana with regard to the alleged wrongful conduct of the NSP staff sufficient to give rise to a

plausible claim for relief under § 1983. *See Rode*, 845 F.2d at 1207.

Therefore, this Court concludes that Plaintiff's general allegation against Lagana is based on an impermissible theory of respondeat superior. As this is the only allegation asserted against Lagana, the Complaint is dismissed without prejudice accordingly.[2]

C. The Complaint Fails to State a Cognizable Claim

  1. *Interference with Mail Claim*

"[P]risoners, by virtue of their incarceration, do not forfeit their First Amendment right to use of the mails." *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)); *Nixon v. Secretary Pennsylvania Dept. of Corrections*, 501 F. App'x 176, 178 (3d Cir. 2012). However, a prisoner's right to send and receive mail may be restricted for legitimate penological concerns. *Id*. (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

---

[2] The Court recognizes that Plaintiff may be able to cure the deficiencies of his Complaint by pleading facts of personal involvement by the supervisory Defendant, Paul Lagana, with the requisite particularity as required under *Rode*, *supra*. Plaintiff should note that an amended complaint supersedes prior complaints. *See Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2003). Accordingly, an amended complaint must name all defendants, assert facts stating a claim against each defendant, and must otherwise be complete in and of itself. *Id*.

8

Here, Plaintiff alleges that he does not receive his mail in a timely fashion and that Defendant McGee does not permit inmates to carry their mail to the mailbox, but rather collects the mail herself. Plaintiff relates these instances of interference with his mail as an infringement on his access to the courts. In his opposition to Defendants' motion to dismiss, Plaintiff generally alleges that the delay in receiving his mail has caused him to miss deadlines with the court. (ECF No. 6 at 9.) Plaintiff does not allege that any lawsuits were dismissed or terminated as a result of the alleged delay in receiving or sending his mail.

Plaintiff's claim of interference with his mail can be construed as a denial of access to the courts in violation of the First Amendment. A prisoner who alleges such a violation of his right of access to the courts, however, must show "actual injury." *Dunbar v. Barone*, 487 F. App'x 721, 724 (3d Cir. 2012)(citing *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996)). Plaintiff may show "actual injury" by alleging that Defendants' interference with his mail resulted in the loss or rejection of a claim. *Dunbar*, *supra* (citing *Lewis*, 518 U.S. at 351). However, such a claim must relate to either a direct or collateral challenge to the prisoner's sentence or conditions of confinement. *Lewis*, 518 U.S. at 355 ("Impairment of any other litigating capacity is simply one of the incidental ... consequences of conviction and incarceration."); *Nixon*, 501 F. App'x at 178, fn.

9

2. As noted above, Plaintiff has not specifically identified any claims or lawsuits relating to a challenge to his conviction or sentence, or to his conditions of confinement, which were lost or rejected due to the alleged interference with his mail. Accordingly, he has not established actual injury, and this claim is dismissed without prejudice, in its entirety as against all named Defendants, for failure to state a claim at this time.

   2. *Conditions of Confinement Claim*

   Finally, Plaintiff alleges that his cell light had been broken for several months and was not fixed despite a work order for same. He further alleges that he was "forced to read and write in virtual darkness" resulting in blurred vision and headaches. (ECF No. 6 at 9.) The Court construes Plaintiff's allegations as asserting an Eighth Amendment conditions of confinement claim.

   Prison conditions may amount to cruel and unusual punishment contrary to the Eighth Amendment if they cause "unquestioned and serious deprivations of basic human needs ... [or] deprive inmates of the minimal civilized measure of life's necessities." *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 417–18 (3d Cir. 2000) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *Allah v. Ricci*, --- F. App'x ----, 2013 WL 3816043, *2 (3d Cir. Jul. 24, 2013); *Gardner v. Lanigan*, Civil No. 13-7064 (FLW), 2013 WL 6669230, *3 (D.N.J. Dec. 18, 2013). To state an Eighth Amendment

conditions of confinement claim, an inmate must satisfy both an objective and subjective test. Namely, the prisoner must allege facts plausibly showing (1) objectively, his conditions were so severe that they deprived him of an identifiable, basic human need, such as food, clothing, shelter, sleep, recreation, medical care, and reasonable safety,[3] and (2) defendant was deliberately indifferent to the risk of harm to the plaintiff's health or safety. *See Allah, supra* (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "However, only 'extreme deprivations' are sufficient to present a claim for unconstitutional conditions of confinement." *Dockery v. Beard*, 509 F. App'x 107, 112 (3d Cir. 2013) (citing *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

Some federal courts have held that the constitutional requirement of adequate shelter for a prisoner includes adequate lighting. *See Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (holding that "[a]dequate lighting is one of the fundamental

---

[3] "Relevant considerations include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical activities such as plumbing, ventilation and showers." *Dockery v. Beard*, 509 F. App'x 107, 112 (3d Cir. 2013) (quoting *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996)).

11

attributes of 'adequate shelter' required by the Eighth Amendment," and that the Eighth Amendment is violated where the evidence showed that "lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue"); *Gates v. Cook*, 376 F.3d 323, 341-42 (5th Cir. 2004); *Carney v. Craven*, 40 F. App'x 48, 51 (6th Cir. 2002). However, the circumstances, nature, and duration of the deprivation are critical in determining whether the condition (in this case, inadequate lighting) is grave enough to form the basis of a viable Eighth Amendment claim. *See Fantone v. Herbik*, 528 F. App'x 123, 126-28 (3d Cir. 2013); *Dockery*, 509 F. App'x at 112.

Here, Plaintiff's bare allegation that the light in his cell was broken would not normally rise to the level of an extreme constitutional deprivation to satisfy the objective component of an Eighth Amendment violation. Nevertheless, Plaintiff also alleges that the lighting has not been fixed and he has not been moved to a cell with lighting for a substantially long period of time.[4] Moreover, he alleges that his cell is virtually dark, resulting in his suffering from blurry vision and headaches from trying to read and write in such inadequate illumination. Therefore, these

---

[4] At the time Plaintiff filed his Complaint, in August 2012, he alleged that the lighting situation has existed for several months and has not been fixed. On May 21, 2013, when Plaintiff filed opposition to Defendants' motion, Plaintiff again indicated that the light in his cell has not been fixed. This ten month time period is substantial in length.

12

allegations as to the overall circumstances, nature and duration of the inadequate lighting condition may suggest an Eighth Amendment violation.

However, the Complaint contains no allegations suggesting that Lagana or any other identifiable prison officials were personally involved, that they knew of this lighting deprivation, or that they failed to take reasonable measures in response to such knowledge. As discussed in the previous section, the allegation against Lagana is based solely on an impermissible theory of respondeat superior. *See McKeither v. Folino*, --- F. App'x ----, 2013 WL 5421990, *2, fn. 5 (3d Cir. Sep. 30, 2013) (citing *Farmer*, 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Thus, the Complaint fails to state a viable § 1983 conditions of confinement claim against Lagana or any other named Defendant[5] at this time.

Therefore, this conditions of confinement claim pertaining to inadequate lighting is dismissed without prejudice, in its entirety,

---

[5] Defendant McGee is named only with respect to the interference with mail claim, which has been dismissed as indicated above.

as against all named Defendants. Plaintiff may seek leave to file an amended Complaint in the event he can cure the deficiencies as noted. *See* fn. 2 *supra*.

Finally, the Court need not address the issue of punitive damages as raised by Defendants in their motion to dismiss, because it is rendered moot by dismissal of the Complaint.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendants' motion to dismiss the Complaint. Accordingly, this action is dismissed with prejudice as to the named Defendants, the NJDOC and NSP, because these Defendants are entitled to Eleventh Amendment immunity and are not persons subject to liability under 42 U.S.C. § 1983. However, the Complaint is dismissed without prejudice as to the remaining Defendants for failure to state a cognizable claim at this time. An accompanying Order is filed herewith.

January 6, 2014  *S/Susan D. Wigenton*
SUSAN D. WIGENTON
United States District Court